IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EMCORE CORP.,

    Plaintiff,

v.                                                            No. 12-cv-0985 SMV/RHS

TECHNOCOM SYSTEMS SDN BHD,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction Pursuant to Federal Rule[s] of Civil Procedure 12(b)(2) and 12(b)(5) [Doc. 22] ("Motion" or "Motion to Dismiss"), filed on January 24, 2013. Plaintiff responded on February 25, 2013.[2] [Doc. 24]. Defendant replied on March 11, 2013. [Doc. 27]. Both parties requested judicial review of supplemental authorities. [Docs. 25, 28]. The Court has reviewed the briefing, the record, and the relevant law. No hearing is necessary, and ruling can be issued on the briefing. The Court, being otherwise fully advised in the premises, finds that the Motion is not well-taken and should be denied to the extent it seeks dismissal for lack of personal jurisdiction. To the extent that Defendant challenges service of process, the Motion will be granted; the Court will quash the service of

---

[1] Another defendant—Venture Corp., Ltd—was originally named, but the parties voluntarily dismissed it, and the caption was amended on May 6, 2013. [Doc. 31]. Therefore, only Defendant Technocom remains. For clarity and convenience, the Court will refer to Defendant Technocom alone, even though some filings were submitted prior to Defendant Venture Corporation's dismissal.

[2] Defendant moved to strike two declarations attached to the Response, but the Court denied the motion on May 21, 2013. [Doc. 34].

process and order Plaintiff to serve Defendant in compliance with Fed. R. Civ. P. 4 within 30 days.

## Background

Plaintiff is a New Jersey corporation with its principal place of business in Albuquerque, New Mexico. [Doc. 1] at 1. Defendant is a Malaysian company with an assembly facility in that country. [Doc. 22] at 2. Apart from its relationship with Plaintiff, Defendant has no other ties to New Mexico. It has filed no papers with the Secretary of State. It has no registered agent, offices, operations, or assets in New Mexico. Defendant has never before litigated in New Mexico. None of its directors or employees resides in New Mexico. It does not advertise here and has no parent or subsidiary here. [Doc. 22] at 3–4.

The parties first made contact with each other around 2005 through a third party called Avago. [Doc. 1] at 2. Plaintiff manufactures vertical cavity surface emitting lasers (VCSELs) in New Mexico for Avago, and Defendant utilizes Plaintiff's VCSELs in the assembly of optic transceivers in Malaysia, also for Avago. [Doc. 1] at 2; [Doc. 22] at 2–3. Around 2005 or 2006, Avago instructed Defendant to obtain its VCSELs directly from Plaintiff, and Defendant complied. [Doc. 1] at 2; [Doc. 22] at 2–3. During a 26-month period beginning in 2005 or 2006, Defendant submitted 29 purchase orders for VCSELs to Plaintiff in New Mexico. [Doc. 1] at 2−3; [Doc. 24] at 2. Defendant was to make payment to Plaintiff in New Mexico. [Doc. 24] at 15. Some of the VCSELs were defective and were returned to Plaintiff in New Mexico. [Doc. 24] at 3. The parties exchanged hundreds, perhaps thousands, of electronic mail messages with each other. [Doc. 24] at 3. Defendant withheld some payments from Plaintiff, [Doc. 1]

2

at ¶¶ 20, 25, 30, 35, 40, for allegedly unacceptable failure rates in the VCSELs, *id.* at 3−6. Plaintiff then initiated this action for breach of contract, alleging diversity jurisdiction.[3] [Doc. 1]. Plaintiff attempted to serve Defendant with process by Global Express Guaranteed, which was signed for by Defendant's representative in Malaysia. [Doc. 24] at 20; [Doc. 8] at 4.

## Analysis

Defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(5) for improper service of process. [Doc. 22]. It claims that it does not have sufficient minimum contacts with New Mexico to confer personal jurisdiction and that it would be unreasonable to require it to defend the suit here. Further, Defendant claims that it has not been properly served.

### I.     Standard for Personal Jurisdiction

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. The Rule 12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well-established. When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In the preliminary stages of litigation, this "burden is light[, and p]rior to trial, the plaintiff is only required to

---

[3] Plaintiff alleges diversity of citizenship and "at least $75,000" in controversy. [Doc. 1] at 2.  Of course, district courts do not have diversity jurisdiction of actions in which $75,000 is in controversy. 28 U.S.C. § 1332 (a); *Elliot Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1104 (10th Cir 2005). The amount must *exceed* $75,000. § 1332. Accordingly, "at least $75,000" is not adequate; at least $75,000 and one penny is the minimum amount. *See id.*; *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 252–53 (6th Cir. 2011) (dismissing case sua sponte where only $75,000 was in controversy, "one penny short of the jurisdictional bar"). Despite this problem, in other portions of the Complaint, Plaintiff specifically alleges that Defendant owes it amounts totaling more than $420,000. [Doc. 1] at 10–11. Therefore, the jurisdictional threshold is met.

establish a prima facie showing of [personal] jurisdiction." *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Only the well-pleaded facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Moreover, if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Wenz*, 55 F.3d at 1505.

The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980). "To obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). In New Mexico, a federal court has personal jurisdiction over a non-resident defendant only to the extent that the state's long-arm statute permits. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). New Mexico's long-arm statute provides, in pertinent part, as follows:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal

>representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>(1)   the transaction of any business within this state;

NMSA 1978, § 38-1-16.  The Supreme Court of New Mexico has explained that "[t]ransaction of any business . . . is defined as doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."  *Monks Own, Ltd. v. Monastery of Christ in Desert*, 2007-NMSC-54, ¶ 24, 142 N.M. 549, 168 P.3d 121 (internal quotation marks omitted).

New Mexico's long-arm statute is coextensive with the Fourteenth Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it also is authorized by the long-arm statute.  *Fireman's Fund Ins. Co. v. Thyssen Mining Constr.*, 703 F.3d 488, 492 (10th Cir. 2012).

Personal jurisdiction can be general or specific.  Here, Plaintiff does not argue that the Court has general jurisdiction over Defendant based on "continuous and systematic general business contacts" with New Mexico.  *TH Agric. & Nutrition v. ACE Eur. Grp. Ltd.*, 488 F.3d 1282 (10th Cir. 2007) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)); *see* [Doc. 24] at 2–3 (outlining Defendant's contacts with Plaintiff).  Thus, the dispute here is whether the Court has specific jurisdiction over Defendant.

A.  <u>Specific Jurisdiction</u>

A court may assert personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state such that subjecting the defendant to the

court's jurisdiction will "not offend traditional conceptions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945).

B.  Minimum Contacts

The determination of whether a non-resident defendant has minimum contacts sufficient to support a court's exercise of personal jurisdiction depends on the "particular facts of each case."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004).  The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. A defendant may reasonably anticipate being subject to suit in the forum state if "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted), and the litigation must "result[] from alleged injuries that arise out of or relate to those activities," *Intercon*, 205 F.3d at 1247 (internal quotation marks omitted).  Even a single phone call or letter may be sufficient to support jurisdiction, if it represents and attempt by the Defendant to purposefully avail itself of the privileges associated with conducting business in the forum state. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418−19 (10th Cir. 1988).

C.  Purposeful Availment

A business's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  But "parties who reach out beyond one state and create continuing

6

relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* at 473. To determine whether a non-resident defendant has purposefully established minimum contacts with the forum state by contracting with another party, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. That is, the contract relied upon to establish minimum contacts must have a "substantial connection" with the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Sanchez v. Church of Scientology*, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993) ("The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts.")  New Mexico's long-arm jurisprudence[4] outlines some additional non-exclusive factors to consider: "(1) who initiated the transaction; (2) where the transaction was entered into; and (3) where the performance was to take place." *CABA Ltd. Liab. Co. v. Mustang Software, Inc.*, 1999-NMCA-089, ¶ 12, 127 N.M. 556, 984 P.2d 803 (internal quotation marks omitted); *see Ideal Ins. Agency v. Shipyard Marine, Inc.*, 572 N.E.2d 353, 357 (Ill. App. Ct. 1991) (applying same factors).

For example, where a California company negotiated a contract with a New Mexico company via facsimile, mail, and electronic mail but had no other contacts with the State, the New Mexico Court of Appeals held that the California company had not "transacted business

---

[4] The New Mexico Supreme Court has ruled that "[b]ecause New Mexico's long-arm statute was adopted directly from that of Illinois, [it] regard[s] Illinois cases on long-arm jurisdiction as persuasive authority." *Customwood Mfg., Inc. v. Downey Const. Co., Inc.*, 102 N.M. 56, 58, 691 P.2d 57, 59 (1984); *see Pelton v. Methodist Hosp.*, 989 F. Supp. 1392, 1393 (D.N.M. 1997) ("[T]he New Mexico long arm statute was taken from Illinois, and therefore Illinois law is persuasive on its interpretation").

within the state" and that there were insufficient minimum contacts to confer personal jurisdiction over it.  *CABA*, 1999-NMCA-89; *see* § 38-1-16(A) (New Mexico's long-arm statute, which identifies the transaction of business within the State).

However, where an out-of-state entity does more than merely negotiate one contract with a resident company, jurisdiction may be warranted.  A string of Illinois cases addressing the issue is illustrative.  In *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, the Seventh Circuit Court of Appeals found personal jurisdiction where the non-resident had communicated with a resident repeatedly by telephone, mail, and electronic mail over an eight-month period in preparation for the development of a project.  536 F.3d 757, 763 (7th Cir. 2008).  The court held that these contacts satisfied both Illinois' long-arm statute[5] and the Constitution's minimum-contacts requirement.  *See id.*; *see also Royal Extrusions Ltd. v. Cont'l Window & Glass Corp.*, 812 N.E.2d 554, 556, 560 (Ill. App. Ct. 2004) (finding personal jurisdiction where non-resident faxed multiple purchase orders to a resident over a four- or five-year period and failed to pay when some of the orders were filled); *Autotech Controls Corp. v. K.J. Elecs. Corp.*, 628 N.E.2d 990, 994 (Ill. App. Ct. 1993) (finding personal jurisdiction where non-resident transmitted numerous purchase orders to resident but failed to pay when the orders were filled); *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 596 N.E.2d 212, 215 (Ill. App. Ct. 1992) (finding personal jurisdiction where non-resident initiated contact with resident, traveled to the forum state to

---

[5] The subsection of Illinois' long-arm statute at issue in *Citadel* precisely mirrors a portion of New Mexico's long-arm statute.  *Compare* 735 ILL. COMP. STAT. 5/2-209(a)(1) (non-residents submit to Illinois' jurisdiction as to any cause of action arising from their "transaction of any business within the State"), *with* § 38-1-16(A)(1) (non-residents submit to New Mexico's jurisdiction as to any cause of action arising from their "transaction of any business within the State").

inspect resident's facilities, and placed numerous orders with resident for custom products over several years, and where one of the orders gave rise to the litigation).

### D. Defendant has minimum contacts with New Mexico.

Plaintiff argues that the Court has personal jurisdiction over Defendant because Defendant entered into the agreement at issue in New Mexico, knew that Plaintiff's place of business was in New Mexico, was required to make payment under the agreement in New Mexico, maintained an ongoing relationship with Plaintiff by transmitting 29 purchase orders to it over 26 months, negotiated contract terms, had hundreds—perhaps thousands—of communications with Plaintiff, returned a number of VCSELs to Plaintiff in New Mexico, and breached the parties' agreements by failing to pay Plaintiff. [Doc. 24] at 1–2.

Defendant impliedly counters that the five purchase orders referenced in the Complaint are not sufficient to confer personal jurisdiction. [Doc. 22] at 4. Defendant does not dispute Plaintiff's factual allegations, including that Defendant sent Plaintiff 29 purchase orders—rather than five—over a 26-month period. [Doc. 27] at 4–8. Instead, Defendant objects to the allegations on evidentiary grounds. [Doc. 27] at 4–8. Defendant argues that it did not purposely initiate activity within New Mexico. It asserts that, like the defendant in *CABA*, it communicated with Plaintiff remotely from outside New Mexico. [Doc. 27] at 10. Furthermore, it explains that it did not initiate contacts with Plaintiff; either Avago or Plaintiff initiated the contacts between the parties. [Doc. 27] at 10.

The Court finds that Plaintiff has met its burden to make a prima facie showing of Defendant's minimum contacts with New Mexico. Defendant established an ongoing business

relationship with Plaintiff, thereby transacting business within New Mexico. Defendant transmitted 29 purchase orders to Plaintiff in New Mexico during a 26-month period. The parties exchanged (at least) hundreds of electronic mail messages regarding their ongoing contractual relationship. The parties agreed that Defendant would be required make payment in New Mexico. Finally, Defendant returned some of the allegedly problematic VCSELs to Plaintiff in New Mexico. Defendant's contacts with New Mexico were not "random, fortuitous, or attenuated." *Sanchez*, 115 N.M. at 664, 857 P.2d at 775. Defendant has purposefully directed its activities at a resident of New Mexico, and the litigation results from alleged injuries that "arise out of or relate to those activities." *Burger King*, 471 U.S. at 472. Therefore, personal jurisdiction can be exercised over Defendant consistent with due process considerations.

### E. Traditional Notions of Fair Play and Substantial Justice

Even when a defendant has purposefully established minimum contacts with a forum state, "minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction." *Burger King*, 471 U.S. at 477–78 (internal quotation marks omitted). This determination requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state. *Asahi*, 480 U.S. at 113. Courts assess reasonableness by weighing five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Intercon*, 205 F.3d at 1249 (quoting *Burger King*, 471 U.S. at 477).  In assessing the reasonableness of jurisdiction, courts also consider the strength of a defendant's minimum contacts.  *TH Agric.*, 488 F.3d at 1292.  The reasonableness prong of the due process inquiry "evokes a sliding scale:  the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  *Id.*

In this case, when the potential hardships are balanced, the Court finds that the exercise of jurisdiction over Defendant comports with notions of fair play and substantial justice.  First, Defendant would have to fly witnesses from Malaysia to New Mexico if litigation proceeds here.  However, Plaintiff would similarly be burdened if the case were heard in Malaysia.[6]  Based on the record to date, the Court cannot say that the burden factor weighs in either party's favor.

Second, New Mexico has a strong public policy interest in addressing injuries to its residents that result from business contacts with foreign corporations doing business in New Mexico.  *See TH Agric.*, 488 F.3d at 1293 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.").  This factor, therefore, weighs in Plaintiff's favor.

The third factor—Plaintiff's interest in convenient and effective relief—weighs in Plaintiff's favor as well because judgment in federal court would result in convenient and effective relief.  This Court has no idea (1) whether relief is, in fact, available in a Malaysian court, or (2) how convenient or effective it would be.

---

[6] Defendant suggests that the case could be litigated in Singapore, whose law will govern, but it is unclear whether either party is subject to jurisdiction there considering that neither is a resident.  On the present record, the only connection that Plaintiff has to Singapore is that Singaporean law governs this dispute.

The interstate judicial system is not implicated in this case, and this factor, therefore, weighs in neither party's favor. Similarly, the fifth factor—the shared interest of the several states in furthering fundamental substantive social policies—is not applicable. The parties have not argued that exercising jurisdiction would affect the substantive social policy interests of New Mexico or Malaysia. Accordingly, this factor does not weigh in either party's favor.

However, "[t]he Supreme Court has cautioned that great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *TH Agric.*, 488 F.3d at 1297 (internal quotation marks omitted). The Court, therefore, must look closely at the extent to which the exercise of personal jurisdiction over Defendant would interfere with the Malaysian sovereignty. *See id.* Here, Defendant is a Malaysian business, but Malaysian law does not govern the dispute; Singaporean law governs. Therefore, Malaysia's sovereign interest in interpreting its laws is not implicated. Moreover, Defendant chose to conduct business with Plaintiff. Defendant argues that it was required to transact business with Plaintiff by Avago, but the reason for that choice is irrelevant. *See id.* (identifying factors to weigh in considering whether personal jurisdiction would interfere another nation's sovereignty). Carefully considering all of the circumstances, the Court finds that exercising personal jurisdiction over Defendant does not interfere with Malaysian sovereignty.

Based on all of the *Intercon* factors, the Court finds that exercising personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

II. Service of Process

Foreign defendants may challenge service under Fed. R. Civ. P. 12(b)(4) and 12(b)(5). Motions brought under each subsection are distinct. "Rule 12(b)(4) . . . concerns the form of process, such as a summons not properly containing the names of the parties. Rule 12(b)(5), on the other hand, concerns the mode of delivery or lack of delivery of the summons and complaint." *Anzulewicz v. Nat'l Fuel Gas Supply Corp.*, 208 F.R.D. 47, 49 n.5 (W.D.N.Y. 2002). When a defendant challenges service under Rule 12(b)(5), the burden of proof is on the plaintiff to show the adequacy of service by affidavits or evidence presented at a pretrial hearing. *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

Here, Defendant moves to dismiss the action under Rule 12(b)(5). [Doc. 22] at 18. Specifically, Defendant argues that it has not been properly served. [Doc. 22] at 19–20. Defendant argues—and Plaintiff does not dispute—that Fed. R. Civ. P. 4(f)(2) dictates the acceptable delivery methods for service of process to Defendant in Malaysia. [Doc. 22] at 18; [Doc. 24] at 20–22.

> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

13

>> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(2).

Defendant argues that the service should have been completed by "prepaid A.R. registered post." [Doc. 22] at 19 (quoting Malay. R. Ct. Order 10, r. 1). Defendant explains that prepaid A.R. registered post is service by post with "acknowledgement requested" cards that are returned to the serving party. [Doc. 22] at 19 (citing *Bah Lun Yew v. RHB Bank Berhard*, Civ. Case No. KCH-12A-7/4-2012, (High Court in Sabah & Sarawak at Kuching July 19, 2012) ("[I]t is clear that posting by way of AR registered is a far superior form of service than by way of prepaid registered because the receipt of documents sent by AR registered post must be acknowledged by the recipient.")). Defendant argues that because no "acknowledgement requested" card was returned and because process was not sent "by post," it is inadequate. [Doc. 22] at 20. Defendant asks that the Complaint be dismissed or, in the alternative, that the service be quashed so that Plaintiff may properly serve Defendant. [Doc. 22] at 22.

Plaintiff explains that it attempted to serve Defendant in accordance with Rule 4(f)(2)(c)(ii). *See* [Doc. 24] at 20. However, Plaintiff acknowledges that that the Court Clerk did not "address[] and send[]" the form of mail, as required by Rule 4(f)(2)(c)(ii). [Doc. 24] at 20. Plaintiff argues that it has substantially complied with the rules for service because the Clerk signed the summons and because Plaintiff acted in good faith. [Doc. 24] at 20. Thus, Plaintiff urges the Court to exercise its discretion and find the service adequate. [Doc. 24] at 20. In the alternative, Plaintiff requests that the Court quash the improper service and allow it time to serve Defendant, rather than dismissing the case. [Doc. 24] at 20–22.

14

Defendant is correct. The Court finds that Plaintiff has not served Defendant in accordance with Rule 4(f)(2)(c)(ii) because the Plaintiff did not use a "form of mail that the clerk address[ed] and sen[t]." *See Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co. Ltd.*, 878 F. Supp. 2d 1252, 1263 (S.D. Ala. 2012) (finding that Rule 4(f)(2)(c)(ii) did not apply where the documents were not addressed or sent by the clerk). However, because it appears that proper service is achievable, the Court will not dismiss the action. Instead, Plaintiff will have 30 days to accomplish proper service. *See Pell v. Azar Nut Co.*, 711 F.2d 949, 951 n.2 (10th Cir 1983) ("[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.").

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction Pursuant to Federal Rule[s] of Civil Procedure 12(b)(2) and 12(b)(5) [Doc. 22] is **GRANTED IN PART** and **DENIED IN PART.** The Motion is denied to the extent that it seeks dismissal for lack of personal jurisdiction. The Motion is granted to the extent that it challenges the service of process. Plaintiff shall serve Defendant in accordance with Fed. R. Civ. P. 4 within 30 days.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**